UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: KWOK,<br>*Debtors* | BANKR. NO. 22-50073 (JAM)<br>*Chapter 11* |
| G CLUB OPERATIONS, LLC,<br>*Appellant*,<br><br>v.<br><br>LUC A. DESPINS,<br>*Ch. 11 Trustee-Appellee.* | ADV. PRO. NO. 23-5013<br><br>CIVIL NO. 3:23-CV-1514 (KAD)<br><br><br>MARCH 11, 2025 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

G-Club Operations ("Appellant" or "G-Club") challenges the order of the Bankruptcy Court finding that G-Club did not meet its burden of establishing that G-Club's documents were protected by the attorney-client privilege insofar as any such privilege was waived, and ordering the turnover of such documents pursuant to the Trustee's settlement agreement with the Assignee of HCHK Technologies, Inc. ("HCHK") in the underlying adversary proceeding (hereinafter, the "G-Club Documents Order").[1] *See Luc A. Despins, Ch. 11 Trustee v. HCHK Technologies, Inc., et al.*, No. 23-ap-5013 (JAM) (Bankr. D. Conn. Nov. 13, 2023), ECF No. 179. For the reasons set forth below, G-Club's appeal is subject to **DISMISSAL** because the G-Club Documents Order is a non-final, interlocutory order for which leave to appeal was neither sought nor granted.

---

[1] G-Club filed a Notice of Appeal in both the underlying Adversary Proceeding, as well as the Chapter 11 Bankruptcy proceeding of Debtor Ho Wan Kwok, *In re Kwok*, No. 22-bk-50073 (the "Main Case"). On January 2, 2024, pursuant to the parties' stipulation, the Court consolidated the two appeals under Case No. 3:23-cv-1514. *See* ECF No. 17.

Nevertheless, the appeal of the G-Club Documents Order, having been considered on the merits, is **AFFIRMED**.

**Facts and Procedural History**

The Court presumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant appeal.

<u>HCHK, G-Club, and the Master Services Agreement</u>

G-Club is an alleged shell company of the Debtor, and one of the various "G-Series" entities functionally owned and controlled by the Debtor. HCHK is a technology and consulting firm providing strategic solutions and a wide range of "a la carte" consulting services across numerous business sectors.[2] On July 30, 2021, G-Club entered into a Master Services Agreement (the "MSA") with HCHK. Under the terms of the MSA, HCHK provided the following services to G-Club: (a) accounting, audit, and tax services; (b) treasury, finance, and risk management services; (c) human resources and payroll services; (d) legal services; (e) information technology support services; and (f) engineering, design, and software development services.

As a general matter, the MSA contemplates that HCHK may use G-Club's documents in the course of providing the foregoing services.[3] In fact, the MSA specifically states that G-Club "will make available in a timely manner for [HCHK's] use, at no charge to [HCHK], all personnel, technical data, computer files, programs, files, documentation, test data, sample output, or other information, and resources required by [HCHK] as set forth in the applicable document for the

---

[2] G-Club disputes the Bankruptcy Court's characterization of HCHK's services as "a la carte." But as observed by the Trustee, HCHK itself, as well as its Assignee, have described the firm's wide-ranging services as "a la carte." *See* Appellant Br., ECF No. 26, at 13 n.13.

[3] G-Club argues that it provided documents to HCHK on a strictly confidential basis purely for cloud-based storage purposes, and not for HCHK to access/use the documents to perform its services to G-Club as set forth in the MSA. As set forth below, the Bankruptcy Court rejected this argument, and correctly so, insofar as the argument conflicts with the plain language of the MSA and was not supported by any evidence.

performance of Services." The MSA further provides, *inter alia*, that HCHK (as the "Receiving Party") may access and use G-Club's documents/information (as the "Disclosing Party") "for the purposes of performing its obligations and exercising its rights under the [MSA]," and may disclose G-Club documents "if . . . required by law to make any disclosure," as long as HCHK first provides an opportunity to G-Club to seek a protective order or other appropriate relief.

The Adversary Proceeding

On December 6, 2022, in the Main Case, the Trustee served a Rule 2004 subpoena on G-Club seeking the production of documents in its possession regarding the Debtor (the "G-Club Subpoena").[4] On December 7, 2022, the Trustee served a Rule 2004 subpoena on HCHK (the "HCHK Subpoena"). On April 20, 2023, HCHK executed a Deed of Assignment purporting to assign all of its assets to Brian W. Hofmeister as Assignee (the "Assignee") for the benefit of HCHK's creditors. On April 25, 2023, the Deed of Assignment was filed in New York state court (the "Assignment Proceedings").

On June 8, 2023, the Trustee filed the underlying adversary proceeding against, *inter alia*, HCHK[5] (the "Adversary Proceeding"), principally alleging that HCHK is the Debtor's alter ego. Through the Adversary Proceeding, the Trustee also sought to enjoin the commencement or continuation of the Assignment Proceedings, as well as the transfer or use of HCHK's assets and/or ownership interests. To that end, the Trustee filed an emergency motion for a temporary restraining order ("TRO") against the continuation of the Assignment Proceedings. On June 12,

---

[4] Thereafter, a dispute arose in the Main Case concerning G-Club's compliance with the Rule 2004 subpoena. That dispute is separate and distinct from the instant appeal, and is not addressed herein.

[5] The Adversary Proceeding was commenced against HCHK, HCHK Property Management, Inc., Lexington Property and Staffing, Inc., Holy City Hong Kong Ventures, LTD., Anthony DiBattista, and Yvette Wang (collectively, the "HCHK Entities"), as well as the Assignee.

2023, the Bankruptcy Court granted the TRO in part and, *inter alia*, restrained the Assignment Proceedings. G-Club is not, and has never been, a defendant in the Adversary Proceeding.

The Rule 9019 Settlement Agreement

Following entry of the TRO in the Adversary Proceeding, the Trustee and the Assignee reached a settlement agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rule 9019 Settlement Agreement"). Pursuant to the Rule 9019 Settlement Agreement, the Assignee agreed, *inter alia*, to turn over corporate documents from HCHK that would otherwise have been sought by the Trustee through discovery in the Adversary Proceeding. On June 23, 2023, the Trustee filed a motion seeking the entry of a proposed order approving the Rule 9019 Settlement Agreement (the "Settlement Motion").

G-Club's Challenge to the Rule 9019 Settlement Agreement

On July 5, 2023, G-Club filed objections to the Settlement Motion and the initial proposed order. Specifically, G-Club asserted that, by virtue of the MSA, HCHK was in possession of confidential G-Club documents which should be returned to G-Club before being turned over to the Trustee as part of the Rule 9019 Settlement Agreement, so that G-Club could evaluate the documents for their responsiveness to the G-Club Subpoena issued in the Main Case. Following a hearing, the Trustee submitted a revised proposed order related to the Settlement Motion (the "Revised Proposed Order"), which would have resolved the confidentiality issues raised by G-Club in its objection. Notwithstanding, G-Club objected to the Revised Proposed Order, asserting the same argument regarding their review of the records for responsiveness and, for the first time, asserted that G-Club should also be permitted to review the documents for attorney-client privilege. In response, the Trustee argued, *inter alia,* that by providing documents to HCHK, G-

4

Club had waived all privilege as to those documents which had by then been turned over to the Assignee and were to be turned over to the Trustee as part of the Rule 9019 Settlement Agreement.

On July 28, 2023, the Bankruptcy Court entered an order granting the Settlement Motion and approving the settlement between the Trustee and the Assignee (the "Order Approving Settlement"). Paragraph 6 of the Order Approving Settlement, *inter alia*, addressed G-Club's remaining objections to the Settlement Motion and set a briefing schedule whereby the Trustee and G-Club would contest whether, prior to the documents being produced to the Trustee, G-Club had the right to review G-Club documents in the possession of the Assignee for responsiveness to the G-Club Subpoena and for privilege.[6] Accordingly, on August 11, 2023, the Trustee filed a memorandum arguing that G-Club did not have any right to review the documents for either responsiveness or privilege. On September 29, 2023, G-Club filed a response to the Trustee's memorandum, and on October 24, 2023, a hearing was held in the Bankruptcy Court. At the conclusion of the hearing, the Bankruptcy Court took the matter under advisement.

<u>The G-Club Documents Order</u>

On November 13, 2023, the Bankruptcy Court issued the G-Club Documents Order, which overruled G-Club's remaining objections to the Settlement Motion and instructed that on or before November 17, 2023: (1) "G-Club shall make available to the Trustee all documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement"; and (2) "the Assignee shall make available to the Trustee all copies retained by the Assignee of documents provided to G-Club by the Assignee in accordance with paragraph 6(a) of the Order Approving Settlement." The Bankruptcy Court concluded that G-Club was not entitled to review

---

[6] The G-Club Documents Order makes clear that paragraph 6 of the Order Approving Settlement did not decide the issues in G-Club's favor, but rather, "reserved the [privilege waiver] issues while providing a mechanism for discovery to continue pending a determination of the issues presently before the [Bankruptcy] Court." To the extent G-Club argues to the contrary, such arguments were specious when raised in the Bankruptcy Court, and are specious on appeal.

5

the G-Club documents for their responsiveness to the G-Club Subpoena before their disclosure to the Trustee, and concluded that G-Club had not met its burden of establishing that the attorney-client privilege applied to any of the documents.  Specifically, the Bankruptcy Court determined that G-Club waived all privilege in its documents when it entered the MSA, through which its records and documents were made available to HCHK.  The Court also rejected G-Club's argument that the Trustee had the burden of proving that HCHK actually accessed G-Club's documents, as opposed to merely having the ability to do so by hosting the documents on a cloud-based server, in demonstrating waiver of the privilege.

The G-Club Documents Order further ordered that "all documents produced to the Trustee pursuant to [the G-Club Documents Order] shall be considered documents designated as 'confidential' and subject to the protective order entered as ECF No. 923 in the [Main Case]."

On November 15, 2023, the Bankruptcy Court denied G-Club's Motion to Stay Pending Appeal.  That same day, G-Club filed the instant Notice of Appeal as to the G-Club Documents Order.[7]

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017).  "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand

---

[7] Although the Bankruptcy Court concluded that "the Assignee may produce G-Club's documents without such documents being subject to G-Club's review for responsiveness to the G-Club Subpoena," this aspect of the Order was not appealed.  Only the Bankruptcy Court's determination that G-Club waived its privilege in the documents provided to HCHK is appealed herein.  The Court does not therefore further address the Bankruptcy Court's determination regarding G-Club's responsiveness argument.

6

with instructions for further proceedings." *Margulies v. Hough (In re Margulies)*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also Stasko v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotations marks omitted). "The bankruptcy court's discovery rulings 'are reversed only upon a clear showing of an abuse of discretion.'" *In re MF Glob. Inc.*, 505 B.R. 623, 627 (S.D.N.Y. 2014) (quoting *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998)).

**Discussion**

G-Club now appeals, in part, the G-Club Documents Order. Specifically, G-Club argues that: (1) the G-Club Documents Order was a final, appealable order, and not a "discovery order"; and (2) the Bankruptcy Court erred in determining that G-Club had waived its attorney-client privilege. In response, the Trustee asserts that (a) the G-Club Documents Order is an interlocutory discovery order not appealable as of right; and (b) to the extent this Court considers the merits of G-Club's appeal, the Bankruptcy Court did not abuse its discretion in concluding that G-Club had not met its burden of establishing privilege with respect to the G-Club documents. The Court

agrees with the Trustee, and concludes that the G-Club Documents Order is not a final, appealable order, but even if construed as such, *see infra* at 10, it must be affirmed because the Bankruptcy Court did not abuse its discretion in entering the G-Club Documents Order.

Final Order

As a threshold matter, the Court must determine whether the G-Club Documents Order is a final, appealable order. G-Club argues that the G-Club Documents Order—which it characterizes as a "contractual interpretation impacting G-Club's rights"—is not a discovery order and thus, is final. As to the merits, G-Club rehashes the arguments rejected by the Bankruptcy Court, and asserts, *inter alia*, that the Bankruptcy Court erroneously "endorsed" the Trustee's improper effort to satisfy the HCHK Subpoena "through a settlement of the Adversary [Proceeding] by ignoring G Club's rights." Neither of these arguments addresses the actual legal issues raised and decided in the Bankruptcy Court. As such, this Court is not persuaded.

Bankruptcy court orders are considered final and therefore appealable as of right only when they "finally dispose of *discrete disputes within the larger case*." *Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 982 F.2d 769, 775 (2d Cir. 1992) (emphasis in original). A discrete dispute "means at least an entire claim on which relief may be granted." *Id.* at 775–76. "Courts have routinely found that bankruptcy court orders granting or denying discovery . . . are not final for the purposes of an appeal to a district court." *Hongkong & Shanghai Banking Corp. Ltd. v. Brandt for CFG Peru Invs. Pte. Ltd. (Singapore)*, No. 17-CV-6672 (VEC), 2017 WL 6729191, at *2 (S.D.N.Y. Dec. 29, 2017). Indeed, such discovery orders "do not finally dispose of an entire claim on which relief may be granted, and therefore are generally treated as interlocutory and not appealable as of right." *In re Towers Fin. Corp.*, 164 B.R. 719, 720 (S.D.N.Y. 1994); *see also In re Celsius Network LLC*, No. 23-CV-523 (JPO), 2023 WL 2648169, at *1 (S.D.N.Y. Mar. 27, 2023).

Here, though the G-Club Documents Order does not invoke Rule 26 or otherwise raise common discovery issues involving, *e.g.*, requests for production or interrogatories, it nevertheless resolves a dispute over a document review for responsiveness, the assertion of attorney-client privilege in an effort to withhold production, and the timing and process for the production of documents as contemplated under the Rule 9019 Settlement Agreement. It is therefore very much a "discovery order" for purposes of evaluating its appealability. Moreover—and crucially—the G-Club Documents Order does not finally dispose of any claim upon which relief might be granted. *See In re Towers*, 164 B.R. at 720. It resolves only these various issues associated with the production of documents to the Trustee, in connection with the Rule 9019 Settlement Agreement. G-Club emphasizes however, that the G-Club Documents Order "resolved all open issues between the Trustee and HCHK in the HCHK Adversary Proceeding," and brought an end to that litigation. As a factual matter, G-Club is incorrect. Following entry of the Order Approving Settlement and the ensuing G-Club Documents Order, the Adversary Proceeding was, at most, only finally resolved as between the Trustee and the Assignee. The litigation continued as to the remaining HCHK Entities, *see supra* n.5, and eventually resolved via a default judgment against those additional Defendants.[8]

G-Club appears to conflate the G-Club Documents Order with the Order Approving Settlement, which did resolve the Adversary Proceeding as between the Trustee and the Assignee and would have been a final appealable order.[9] *See In re Purdue Pharma L.P.*, 724 F. Supp. 3d 260, 266 (S.D.N.Y. 2024) ("a bankruptcy court order approving a settlement is a final order.")

---

[8] The Bankruptcy Court's denial of the HCHK Entities' Motion to Vacate Entry of Default, as well as its subsequent Default Judgment against the HCHK Entities, were the subject of a different appeal to this Court. *See In re Kwok*, No. 3:24-cv-335. That appeal was dismissed on October 24, 2024 pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, due to the HCHK Entities' failure to prosecute. *See id.* at ECF No. 25.

[9] The Court observes that the Order Approving Settlement was appealed, but not by G-Club. *See In re Kwok*, No. 3:23-cv-1067. Such appeal was dismissed via stipulation on August 29, 2024. *See id.* at ECF No. 50.

(citing *In re The Bennett Funding Grp., Inc.*, 439 F.3d 155, 160 (2d Cir. 2006) (approval of Rule 9019 settlement "that brings to an end litigation between parties is a final order")). And as G-Club itself recognizes, the G-Club Documents Order did no more than "finally determine[] the Assignee's right to transfer G Club's corporate records to the Trustee" pursuant to the Rule 9019 Settlement Agreement, by concluding that G-Club had waived its privilege over those records. This is the sort of ancillary discovery issue that courts routinely find to be interlocutory. *See In re Towers*, 164 B.R. at 720 (collecting cases). Accordingly, the Court finds that the G-Club Documents Order is a non-final, interlocutory order that is not appealable absent leave of the Court.[10] As such, this appeal is subject to dismissal.

The G-Club Documents Order

Despite this Court's determination that G-Club Documents Order is not appealable as of right, under the circumstances, the Court will address the merits of the appeal. As G-Club correctly observes, the G-Club Documents Order did serve as a final determination of all issues impacting G-Club in the Adversary Proceeding. G-Club was not named as a party or otherwise involved in the remaining issues being litigated. And although G-Club appealed only the Bankruptcy Court's decision on the issue of privilege waiver, the Court acknowledges the unique procedural circumstances presented here. The G-Club Documents Order, although coming subsequent in time, directly impacts the scope and execution of the Order Approving Settlement, which, as discussed above, is a final appealable order. Thus, given the inter-related nature of, and the close nexus between, the G-Club Documents Order and the Order Approving Settlement, the Court

---

[10] G-Club has not argued, in the alternative, that this Court should grant leave to file an interlocutory appeal under the standards applicable to such requests. *See Osuji v. U.S. Bank, N.A.*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018) (leave to appeal interlocutory order may be granted where "the order (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation").

elects to review the merits of G-Club's appeal in the alternative. Having done so, the Court concludes that the Bankruptcy Court did not abuse its discretion, and that therefore, the G-Club Documents Order must be affirmed.

### *Standard of Review*

G-Club first asserts that the appropriate standard of review is *de novo*. The Court disagrees. To be sure, a mixed question of law and fact is reviewed *de novo*. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). But a court's finding of waiver of the attorney-client privilege generally presents no such mixed question, and indeed, such findings are consistently reviewed for an abuse of discretion. *See Schaeffler v. United States*, 806 F.3d 34, 39–40 (2d Cir. 2015) ("We review the district court's finding of waiver of the attorney-client privilege for abuse of discretion.") (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)). The Court finds *United States v. Mejia* instructive. 655 F.3d 126 (2d Cir. 2011). There, the Second Circuit acknowledged the well-settled principle that rulings on claims of attorney-client privilege are reviewed for abuse of discretion, but further observed that "[t]here are, however, occasions where the attorney-client privilege raises a question of law, which [is] review[ed] *de novo*." *See id.* at 131. But in *Mejia*, as here, the issue was simply whether the privilege applied to the subject communications. *Id.* In other words, "the question involve[d] the application of the attorney-client privilege as our case law has already developed it to the novel set of facts before us; it d[id] not require us to address the scope of the privilege itself in a novel way." *Id.*

In seeking *de novo* review, G-Club exaggerates the nature and scope of the G-Club Documents Order, which merely concluded that G-Club had not met its burden to establish that the attorney-client privilege applied to the documents in question, and that therefore, those documents could be turned over to the Trustee in accordance with the Rule 9019 Settlement

11

Agreement reached in the Adversary Proceeding.[11] Indeed, the narrow question on appeal involves a straightforward application of the attorney-client privilege to the novel set of facts presented; it does not compel an evaluation as to "the scope of the privilege itself in a novel way." *Mejia*, 655 F.3d at 131.

Additionally, G-Club relies heavily on the Bankruptcy Court's citation to the terms of the MSA, arguing that "the Bankruptcy Court's finding of a waiver here was premised on its legal interpretation of the effect of the [MSA]." Appellee Reply Br., ECF No. 29 at 15. But once again, G-Club mischaracterizes the G-Club Documents Order. The Bankruptcy Court's conclusion was an evidence-based assessment, not a matter of contract interpretation. In concluding only that G-Club had not met its burden of establishing that the attorney-client privilege applied, the Bankruptcy Court primarily: (a) emphasized G-Club's failure to provide *any evidence* supporting its assertion that HCHK was merely hosting the G-Club documents on a cloud-based server; and (b) cited the plain language of the MSA—which made clear that HCHK would have access to and could use G-Club's documents—as evidence contradicting and defeating G-Club's otherwise unsupported assertion.

Accordingly, the G-Club Documents Order is reviewed for abuse of discretion.

*Waiver of Privilege*

Turning to the merits, G-Club argues that the G-Club Documents Order is erroneous, because there is no evidence that HCHK accessed the contents of G-Club's documents, and "G-Club did not waive any privilege in its documents by providing HCHK administrative rights as part of providing cloud-based email services." In response, the Trustee argues that G-Club has

---

[11] In support of its argument, G-Club relies on *Krys v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP (In re China Med. Techs., Inc.)*, 539 B.R. 643 (S.D.N.Y. 2015). But as argued by the Trustee, that case is inapposite. Here, this Court is reviewing the Bankruptcy Court's affirmative finding that G-Club's privilege was in fact waived, as opposed to a determination of who owned the privilege in the first instance. *See, e.g.*, *id.*

shirked its burden as the party claiming privilege and that, in fact, G-Club waived its privilege by permitting HCHK to indiscriminately access G-Club documents under the MSA.[12] The Court agrees with the Trustee.

The party asserting the attorney-client privilege bears the burden of establishing that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132; *Harnage v. Kenny*, No. 3:19-CV-938 (SDV), 2022 WL 2046140, at *3 (D. Conn. June 7, 2022) ("The party asserting the privilege bears the burden of establishing its elements.") (citing *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)). It is well-settled that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of the communication to a third party or stranger to the attorney-client relationship. *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008).

Here, there was no dispute in the Bankruptcy Court or on appeal as to whether the G-Club documents had been provided to HCHK by G-Club and were in the possession of HCHK as a result. Indeed, G-Club sought to challenge the Settlement Motion because it contemplated further disclosure by HCHK of G-Club's documents. It was G-Club's burden to prove that its documents are protected by the attorney-client privilege. *See Mejia*, 655 F.3d at 132. Yet, G-Club failed to even acknowledge this burden, much less satisfy it. Instead, G-Club has consistently maintained

---

[12] G-Club further asserts that HCHK lacked authority under the MSA to assign G-Club's data to the Assignee. Because the Court is affirming the Bankruptcy Court's privilege waiver determination on the basis of G-Club's disclosure of its data to HCHK pursuant to the MSA, it need not address the parties' alternative arguments regarding G-Club's purported failure to timely object to the subsequent Assignment Proceedings and/or the related proposed sale of HCHK to G-News Operations. Nevertheless, HCHK's assignment of G-Club's data is immaterial to the Bankruptcy Court's privilege waiver finding, which was principally premised on G-Club's disclosure of documents to HCHK in the first instance. And as observed *supra*, G-Club does not herein challenge the Order Approving Settlement.

that its contractual relationship with HCHK under the MSA is analogous to the relationship between Microsoft or Google and their consumers' use of cloud-based document hosting services. To that tend, G-Club urges that the MSA contemplated HCHK's mere "administrative" access to G-Club documents "as part of providing cloud-based email services," and further asserts that there is no evidence of HCHK accessing the contents of any G-Club documents.  But G-Club—the party asserting privilege and thus, bearing the burden of proof—has wholly failed to provide any support for such a narrow reading of the MSA.  Nor has G-Club provided any evidence that its normal course of dealing with HCHK under the MSA was for HCHK to simply "provide[] and maintain[] G Club's cloud-based email system."  In fact, as accurately observed by the Trustee, "nowhere does the MSA mention cloud-based services or otherwise define the scope of the information technology services provided by HCHK to G Club." As properly observed by the Bankruptcy Court, G-Club's naked assertions as to the services contemplated and provided under the MSA are completely belied by the plain language of the MSA.  For substantially those reasons, the Bankruptcy Court concluded that G-Club had not met its burden of establishing that the attorney-client privilege applied to the documents that G-Club had itself turned over to HCHK, a third party to any purported privileged communications contained in the documents.  In support of this determination, the Bankruptcy Court emphasized the plain language of the MSA, which states that HCHK will provide a wide range of services to G-Club, and that HCHK will have access to and may use G-Club's documents in the course of providing those services.

      The Bankruptcy Court's well-reasoned and factually supported finding was not an abuse of its discretion.  G-Club clearly failed to meet its burden of establishing that the attorney-client privilege applied, *i.e.*, was not waived, particularly when considered within the context of the plain

meaning of MSA, and the complete absence of evidence supporting G-Club's tortured argument. Accordingly, the G-Club Documents Order is **AFFIRMED**.[13]

**Conclusion**

For all of the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of March 2025.

/s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[13] G-Club further challenges the Bankruptcy Court's conclusion that any harm resulting from the disclosure of the G-Club documents to the Trustee could be remedied by clawing back privileged documents pursuant to Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, as made applicable in the Adversary Proceeding by Rule 7026 of the Federal Rules of Bankruptcy. Specifically, G-Club argues that because the "wholesale turnover" of G-Club's data was not limited in scope or proportionality, reviewing the entire universe of G-Club data would be "unduly burdensome, costly, and simply unnecessary." Ironically, it is this very "unduly burdensome, costly, and simply unnecessary" review of the documents that G-Club appears to have advocated for in the Bankruptcy Court—not only for responsiveness, but also privilege. In any event, this determination by the Bankruptcy Court was made in the Court's denial of G-Club's Motion to Stay Pending Appeal, which is not the subject of the instant appeal and is not further addressed herein.